T.C. Memo. 2014-242

UNITED STATES TAX COURT

AMIR SAFAKISH, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 8032-10.                    Filed November 25, 2014.

Amir Safakish, pro se.

Daniel J. Bryant, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PANUTHOS, Chief Special Trial Judge:  In a notice of deficiency dated

January 7, 2010, respondent determined a deficiency of $40,077 in petitioner's

_____

[*]This opinion replaces our previously filed opinion Safakish v.
Commissioner, T.C. Summary Opinion 2013-107.

**[\*2]** 2006 Federal income tax and a section 6662(a) accuracy-related penalty of

$8,015. Respondent also determined a deficiency of $16,371 in petitioner's 2007

Federal income tax, a section 6651(a)(1) addition to tax of $3,785 for failure to

timely file a return, and a section 6662(a) accuracy-related penalty of $3,274.

Unless otherwise indicated, section references are to the Internal Revenue Code

(Code) in effect for the years in issue, and all Rule references are to the Tax Court

Rules of Practice and Procedure.[1]

---

[1]This case was initially docketed as a small tax case in accordance with petitioner's election. At the calendar call before trial petitioner made an informal request that the small case designation be removed. The question of the removal of the S designation was not raised again either before or during the trial. The matter was tried and submitted to the Court. On December 23, 2013, the Court filed T.C. Summary Opinion 2013-107. On September 10, 2014, petitioner filed a motion for reconsideration of findings or opinion pursuant to Rule 161 requesting in the motion that his request that the small case designation be removed be reconsidered. On November 24, 2014, the Court granted the request, the S designation was stricken nunc pro tunc, and the Summary Opinion was withdrawn. In our November 24, 2014, order we noted that "[a]part from the elimination of the right of appeal and precedential effect, we decide S cases very much like regular cases." Mitchell v. Commissioner, 131 T.C. 215, 225 (2008) (Holmes, J., concurring). We noted that upon a review of the record of this matter, and particularly a review of any evidentiary rulings, the parties and evidence were not treated differently as a result of the S election. We concluded that there is no need to modify or supplement the evidentiary record because of the change in the procedural status of this case. Therefore, our Summary Opinion is withdrawn and this Memorandum Opinion is filed only as is necessary to satisfy the current provisions of sec. 7459.

[*3]    After concessions, the issues remaining for decision are:  (1) whether petitioner overstated gross receipts on Schedules C, Profit or Loss From Business, for 2006 and 2007, (2) whether petitioner is entitled to Schedule C business expense deductions for 2006 and 2007 in excess of the amounts respondent allowed, (3) whether petitioner is liable for the section 6651(a) failure to timely file addition to tax for 2007, and (4) whether petitioner is liable for section 6662(a) accuracy-related penalties for 2006 and 2007.

## FINDINGS OF FACT

Some of the facts have been stipulated, and we incorporate the stipulation of facts, the supplemental stipulation of facts, and the stipulation of settled issues by this reference.  Petitioner resided in California at the time the petition was filed.

During the years at issue, petitioner worked full time for ETA-USA (ETA) as an engineer and a director.  In addition to his work for ETA, petitioner operated a sole proprietorship, Z-auto, engaging in the business of vehicle reconditioning and auto leasing and sales.  Petitioner operated Z-auto with the primary purpose of providing reliable transportation for the employees of ETA.  Petitioner provided automobiles to ETA employees at or below cost, and ETA paid petitioner a fee for these services.  During the years in issue petitioner paid rent to Executive Suites for an auto lot and for a small office.  In 2006 and 2007 petitioner traveled to

[*4] various locations to perform his duties for ETA and to conduct the business of Z-auto.

In 2006 and 2007 petitioner earned $60,000 from ETA as an employee which was reported on Forms W-2, Wage and Tax Statement, as wages, tips, and other compensation. Petitioner received additional income from ETA in 2006 of $58,000 which was reported on Form 1099-MISC, Miscellaneous Income.

Petitioner timely filed a Federal income tax return for 2006. On Schedule C petitioner reported gross receipts of $135,682 and cost of goods sold of $89,657.[2] Petitioner also reported expenses for his business, including expenses for travel and legal and professional fees.

On his 2007 return, filed October 19, 2008, petitioner reported gross receipts of $76,892 and cost of goods sold of $29,576 for his auto business.[3]

_____

[2]The amount petitioner reported on Schedule C line 4, which serves to reduce gross receipts or sales by cost of goods sold, did not correspond with the amount on Schedule C line 42, the line where the cost of goods sold is calculated. The amount on line 42, which reflects the difference between beginning inventory and ending inventory, was $12,267 rather than $89,657. It is unclear how petitioner derived the amount of $89,657.

[3]The amount petitioner reported on Schedule C line 4, which serves to reduce gross receipts or sales by cost of goods sold, did not correspond with the amount on Schedule C line 42, the line where the cost of goods sold is calculated. The amount on line 42, which reflects the difference between beginning inventory and ending inventory, was $19,664 rather than $29,576. It is unclear how

(continued...)

[*5] Petitioner reported business expenses for travel, legal and professional fees, rent or lease, and car and truck.

In a notice of deficiency, respondent disallowed in full the claimed costs of goods sold for 2006 and 2007. Respondent disallowed the claimed 2006 Schedule C business expense deductions for travel and legal and professional fees and the claimed 2007 Schedule C business expense deductions for travel, legal and professional fees, rent or lease, and car and truck. With respect to cost of goods sold for 2006 and 2007, petitioner did not contest respondent's disallowance but rather asserted that he had overstated gross receipts for Z-auto.

## OPINION

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioner did not allege that section 7491(a) applies. See sec. 7491(a)(2)(A) and (B). Therefore, petitioner bears the burden of proof. See Rule 142(a).

_____

(...continued)
petitioner derived the amount of $29,576.

[*6] I. Gross Receipts[4]

Petitioner reported Schedule C gross receipts of $135,682 for 2006 but asserted at trial that he should have reported only $58,000 as reflected by ETA on Form 1099-MISC. Petitioner reported Schedule C gross receipts of $76,892 for 2007 but asserted at trial that he did not have gross receipts other than amounts paid to him by ETA for his Schedule C activity.[5] Petitioner was uncertain how much ETA had paid him in 2007 but thought it was possible that ETA had paid him the same amount he was paid in 2006, $58,000.[6]

Petitioner provided copies of his bank records and credit card statements for 2006 and 2007 in an attempt to support his assertion that he had overstated his gross receipts. A review of petitioner's bank records for 2006 reflects deposits

---

[4]In calculating gross income, taxpayers may offset gross revenue with cost of goods sold. B.C. Cook & Sons, Inc. v. Commissioner, 65 T.C. 422, 428 (1975), aff'd, 584 F.2d 53 (5th Cir. 1978). Cost of goods sold is computed with reference to the value of a taxpayer's opening and closing inventories for the year. The cost of goods purchased for resale, with an adjustment for the difference between opening and closing inventories for the year, is then deducted from gross sales in computing gross income. Sec. 1.162-1(a), Income Tax Regs.; see sec. 1.61-3, Income Tax Regs.

[5]Petitioner testified that he may have sold a car in 2007 or 2008.

[6]It is unclear whether ETA issued petitioner a Form 1099-MISC for 2007.

[*7] totaling $261,328.[7] Petitioner's 2006 return reflects that $223,337 of proceeds was eligible for deposit.[8] Petitioner's records indicate that deposits to his bank account exceeded the amount of gross receipts reported on his 2006 return. Petitioner failed to identify or specify particular deposits that were nonincome items. Accordingly, petitioner failed to establish that he overstated gross receipts on his 2006 return.

A review of petitioner's bank records for 2007 reflects deposits totaling $247,677.[9] Petitioner's 2007 return reflects that $181,059.78 of proceeds was eligible for deposit.[10] Petitioner's records indicate that deposits to his bank account exceeded the amount of gross receipts reported on his 2007 return. Petitioner failed to identify or specify particular deposits that were nonincome

---

[7]This excludes amounts attributable to cash advances of $39,000 and Visa instant cash transfers of $13,000.

[8]This amount comprises $60,000 of Form W-2 income, $135,682 reported on Schedule C as gross receipts or sales, $655 of taxable interest, and $27,000 of rent received.

[9]The bank records do not reflect deposits attributable to cash advances or Visa instant cash transfers.

[10]This amount comprises $60,000 of Form W-2 income, $76,892 reported on Schedule C as gross receipts or sales, $455 of taxable interest, $470 of taxable refunds, $35,000 of rents received, and $8,242.78 of proceeds from stock sales.

**[*8]** items. Accordingly, petitioner failed to establish that he overstated gross receipts on his 2007 return.

II.     Schedule C Expenses

A taxpayer must substantiate amounts claimed as deductions by maintaining the records necessary to establish that he or she is entitled to the deductions.  Sec. 6001.  Section 162(a) provides a deduction for certain business-related expenses. In order to qualify for the deduction under section 162(a), "an item must (1) be 'paid or incurred during the taxable year,' (2) be for 'carrying on any trade or business,' (3) be an 'expense,' (4) be a 'necessary' expense, and (5) be an 'ordinary' expense."  Commissioner v. Lincoln Sav. & Loan Ass'n, 403 U.S. 345, 352 (1971); Deputy v. du Pont, 308 U.S. 488, 495 (1940) (to qualify as "ordinary", the expense must relate to a transaction "of common or frequent occurrence in the type of business involved").  Whether an expense is ordinary is determined by time, place, and circumstance.  Welch v. Helvering, 290 U.S. at 113-114.

If a taxpayer establishes that he or she paid or incurred a deductible business expense but does not establish the amount of the expense, we may approximate the amount of the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his or her own making.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  In order for the Cohan rule to apply, there must be

**[*9]** sufficient evidence in the record to provide a basis for the estimate. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). Certain expenses may not be estimated because of the strict substantiation requirements of section 274(d). See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969).

Section 274(d) applies to certain business expenses including, among other things, expenses for gifts and listed property and travel expenses (including meals and lodging while away from home). To substantiate a deduction attributable to travel expenses, a taxpayer must maintain adequate records or present corroborative evidence to show the following: (1) the amount of each travel expense; (2) the time and place of travel; and (3) the business purpose for travel. Sec. 1.274-5T(b)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

A. Legal and Professional Fees--2006 and 2007

Petitioner claimed deductions for legal and professional fees on his 2006 and 2007 Schedules C. He testified that in 2006 he incurred approximately $7,000 to $8,000 for legal expenses related to a 1997 tax dispute; however, petitioner admitted that the legal fees for which he claimed a deduction for 2006 were unrelated to his Schedule C activity. Petitioner did not provide further evidence or

[*10] documentation that he incurred legal or professional fees in connection with his Schedule C activity for 2006 or 2007. Accordingly, the Court sustains respondent's disallowance of the deductions for legal and professional fees for 2006 and 2007.

B. Travel--2006 and 2007

Petitioner testified that he traveled to various locations for ETA and for his Schedule C activity.

Most of petitioner's travel, primarily to Japan, was related to his employment at ETA, and ETA reimbursed him for these expenses. While petitioner provided credit card statements evidencing car rentals and plane ticket purchases, he failed to explain the business purpose of the travel expenses and how the expenses related to his Schedule C activity at Z-auto. We sustain respondent's determinations in this regard.

C. Car and Truck Expenses--2007

Petitioner claimed a deduction for car and truck expenses on his 2007 Schedule C. Petitioner did not provide any documents demonstrating the business purpose of the car and truck expenses. He did not provide a mileage log, nor did he provide any detailed explanation to support the claimed car and truck expense

[*11] deduction for 2007.  Therefore, the Court sustains respondent's disallowance of the car and truck expense deduction.

D.    Rent Expenses--2007

Petitioner testified that he rented space for Z-auto from Executive Suites and wrote out monthly checks for rent to Executive Suites.  These checks were given to the manager of the property, Scott Voigt.  At one time, petitioner issued a check directly to Mr. Voigt because he had missed two rent payments.  Petitioner provided carbon copies of three rent checks he issued to Executive Suites and Mr. Voigt throughout 2007.  Two checks were for $350 each while the remaining check was for $700, for a total of $1,400 in rent payments for 2007.  Petitioner has not otherwise provided support for his claimed rental expense deduction.

The Court is satisfied that petitioner incurred $1,400 of rent expenses and that the payments were ordinary and necessary business expenses of Z-auto.  The Court sustains respondent's disallowance of a deduction for the claimed rent expenses to the extent the claim exceeds $1,400.

III.   Failure To File Addition to Tax

Section 6651(a)(1) imposes an addition to tax of 5% per month of the amount of tax required to be shown on the return, not to exceed 25%, for failure to timely file a return.  The addition to tax under section 6651(a)(1) is imposed

[*12] unless the taxpayer establishes that the failure to timely file was due to reasonable cause and not willful neglect. Section 7491(c) provides that the Commissioner has the burden of production in any Court proceeding with respect to liability for an addition to tax.

The record reflects that the Internal Revenue Service received petitioner's return on October 19, 2008. Petitioner did not provide any explanation of the reasons for the delinquent filing. The record does not establish that petitioner's failure to timely file his 2007 Federal income tax return was due to reasonable cause and not willful neglect. Therefore, petitioner is liable for the section 6651(a)(1) addition to tax.

IV.    Section 6662(a) Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a penalty of 20% of the portion of an underpayment of tax attributable to the taxpayer's negligence, disregard of rules or regulations, or substantial understatement of income tax. "Negligence" includes any failure to make a reasonable attempt to comply with the Code, including any failure to keep adequate books and records or to substantiate items properly. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. A "substantial understatement" includes an understatement of income tax that exceeds the greater

[*13] of 10% of the tax required to be shown on the return or $5,000. See sec. 6662(d); sec. 1.6662-4(b), Income Tax Regs.

The section 6662(a) accuracy-related penalty does not apply with respect to any portion of an underpayment if the taxpayer proves that there was reasonable cause for such portion and that he acted in good faith with respect thereto. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess the proper tax liability; the knowledge and the experience of the taxpayer; and any reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the taxpayer's effort to assess the taxpayer's proper tax liability. Id.

The Commissioner has the burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662. To satisfy that burden, the Commissioner must produce sufficient evidence showing that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Respondent determined the accuracy-related penalty for each year on account of negligence or a substantial understatement of income tax. Respondent has satisfied his burden with respect to negligence by producing evidence that

[*14] petitioner failed to maintain adequate books and records. See sec. 1.6662-3(b)(1), Income Tax Regs. In addition, the underpayments of tax are the result of substantial understatements of income tax for 2006 and 2007 because the understatements of $40,077 and $16,371, respectively, exceed $5,000, which is greater than 10% of the tax required to be shown on the returns.[11] Accordingly, because respondent has met his burden of production, petitioner was required to come forward with persuasive evidence that the accuracy-related penalty should not be imposed with respect to the underpayment because he acted with reasonable cause and in good faith. See sec. 6664(c)(1); Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446.

Petitioner offered no argument or other evidence to show that there was reasonable cause for the deductions claimed and that he acted in good faith with respect to the underpayments. Respondent's determination of accuracy-related penalties under section 6662(a) for 2006 and 2007 will be sustained.

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

-------

[11]The allowance of rental expenses of $1,400 for 2007 would not reduce the understatement of income tax below $5,000. The amounts required to be shown on the returns for 2006 and 2007 were $42,374 and $18,602, respectively.

**[\*15]**  To reflect the foregoing,

Decision will be entered

under Rule 155.